Ryan T. Earl
EARL & EARL PLLC
6126 W. State Street #203
Boise, ID 83703
Telephone: 208-318-8449
Fax: 719-269-8832
ISB# 8342 WSBA# 34007 CO#45910
enepllc@gmail.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHAD L. WAHL, | |
|                 Plaintiff, | Case No: |
|         vs. | |
| CORIZON HEALTH, INC; CORIZON, LLC; | COMPLAINT |
| SUMMER ELDRIDGE; ANTHONY | |
| BUSHNELL, P.A.; RALPH M. SUTHERLIN, | |
| M.D.; WILLIAM ROGERS, N.P.; REBEKAH | |
| HAGGARD, M.D.; RONA SIEGERT; | |
| AARON HOFER; KIP LAURY, as an | |
| individual and in his official capacity; TJ | |
| MAYER, as an individual and in his official | |
| capacity; SIKKO BARGHOORN, as an | |
| individual and in his official capacity; | |
| CORIZON JOHN DOES 1-5; ADA COUNTY | |
| SHERIFF STEPHEN BARTLETT in his | |
| individual and official capacity; ADA | |
| COUNTY JOHN DOES 6-10. | |
|                 Defendants. | |

COMES NOW the Plaintiff, CHAD L. WAHL, by and through his attorney of record,

Ryan T. Earl, of the law firm EARL & EARL, PLLC, and hereby submits to this Court

Plaintiff's Verified Complaint, and in support, states the following:

///

**VERIFIED COMPLAINT-** 1 of 20

## I. PLAINTIFF TO THIS ACTION

1.      Plaintiff Chad L. Wahl (hereinafter Mr. Wahl) is an inmate housed at the Idaho State Correctional Institution (hereinafter ISCI), Unit 9, P.O. Box 14, Boise, Idaho, 83707. Mr. Wahl (IDOC #24971) is in the care and custody of Warden Keith Yordy.

## II. DEFENDANTS IN THIS ACTION

1.      Upon information and belief, **Kip Laury** was the parole officer who arrested Mr. Wahl on February 23, 2016 causing significant damage and injury to Mr. Wahl's right, post-surgically repaired shoulder. By placing Mr. Wahl in a single pair of handcuffs with his hands behind his back, Defendant Laury forced Mr. Wahl's right shoulder beyond the range of motion his shoulder could tolerate after recent, extensive surgery.

2.      Upon information and belief, **T.J. Mayer**, Mr. Wahl's assigned parole officer, was aware of the surgery to Mr. Wahl's right shoulder and was present and gave permission to when Defendant Laury handcuffed Mr. Wahl.

3.      Upon information and belief, **Sikko Barghoorn**, was or still is a peace officer (Badge #1334) with the Garden City Police Department. Defendant Barghoorn received Mr. Wahl from Defendants Laury and Mayer. Mr. Wahl asked Defendant Barghoorn to put him in double cuffs due to the amount of pain he was in. Defendant Barghoorn informed Mr. Wahl it was a short drive and re-cuffed Mr. Wahl in single pair of cuffs behind his back.

4.      Upon information and belief **Corizon Health, Inc.** and **Corizon, LLC** (hereinafter Corizon) is a privately held for profit business incorporated under Delaware law whose principle place of business is in Brentwood, Tennessee. Acting under Color of State Law, the acts of Defendant Corizon, deprived Mr. Wahl of his rights under the Eighth Amendment of the United States Constitution. Defendant Corizon had and has final authority in treatment

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

policy, customs, and practice, concerning the acts in this instant action at bar. When Corizon engaged in these acts, they were acting as final policy maker and under Color of State Law and violated their constitutional duty to protect and provide adequate and proper medical care to those entrusted in their custody.

5.      Upon information and belief, **Summer Eldridge, medical provider designation unknown**, is an individual that was employed by or contracted with Corizon as a medical provider to provide medical care to inmates at Idaho Department of Corrections (hereinafter IDOC). Mr. Wahl was seen by Defendant Eldridge on several occasions but most of the appointments pertained to Mr. Wahl's right shoulder. Defendant Eldridge displayed deliberate indifference when he did not address or follow through with shoulder treatment and submitting recommendations and/or requests for: diagnostic testing; an appointment with an off-site specialist; IDOC policy adaptations due to Mr. Wahl's right shoulder injury; and 'home' health care equipment. Due to Defendant Eldridge's deliberate indifference to Mr. Wahl's serious shoulder injury, the condition of Mr. Wahl's shoulder deteriorated and atrophied beyond a potentially effective re-repair.

6.      Upon information and belief, **William Rogers, N.P.**, is an individual that was employed by or contracted with Corizon as a physician's assistant to provide medical care to inmates at IDOC. Mr. Wahl was seen by Defendant Rogers on several occasions but most of the appointments pertained to Mr. Wahl's right shoulder. Defendant Rogers displayed deliberate indifference when he did not address or follow through with shoulder treatment and submitting recommendations and/or requests for: diagnostic testing; an appointment with an off-site specialist; IDOC policy adaptations due to Mr. Wahl's right shoulder injury; and 'home' health care equipment. Due to Defendant Rogers' deliberate indifference to Mr. Wahl's serious

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

shoulder injury, the condition of Mr. Wahl's shoulder deteriorated and atrophied beyond a potentially effective re-repair.

7.      Upon information and belief, **Ralph M. Sutherlin, M.D.** is an individual that was employed by or contracted with Corizon as a physician to provide medical care to inmates at IDOC. Mr. Wahl was seen by Defendant Sutherlin upon his return to ISCI after an off-site stay at a Boise, Idaho hospital for a life-threatening boil. Mr. Wahl was in the Receiving and Diagnostic Unit and Quarantine and gave Defendant Sutherland a detailed history of his right shoulder surgery and recent injury as a result of his arrest. Defendant Sutherlin displayed deliberate indifference when he did not address the traumatic injury to Mr. Wahl's right shoulder and refused to treat it while Mr. Wahl was in the Receiving and Diagnostic Unit and under quarantine, citing it was policy. Due to Defendant Sutherlin's deliberate indifference to Mr. Wahl's serious shoulder injury, the condition of Mr. Wahl's shoulder deteriorated and atrophied beyond a potentially effective re-repair.

8.      Upon information and belief, **Anthony Bushnell, P.A.** is an individual that was employed by or contracted with Corizon as a physician's assistant to provide medical care to inmates at IDOC. Mr. Wahl was seen by Defendant Bushnell upon his return to ISCI for a boil that had developed on his buttocks. Mr. Wahl also requested an evaluation of his recently injured right shoulder. Mr. Wahl was informed by Defendant Bushnell that an inmate could only be seen for one issue at a time and due to the severity of the boil, the right shoulder would not be addressed. Defendant Bushnell displayed deliberate indifference when he did not address the traumatic injury to Mr. Wahl's right shoulder and refused to treat it because Mr. Wahl could only be seen for one issue at a time. Due to Defendant Bushnell's deliberate indifference to Mr.

Wahl's serious shoulder injury, the condition of Mr. Wahl's shoulder deteriorated and atrophied beyond a potentially effective re-repair.

9.     Defendant **Rona Siegert** is an individual who was or still is employed by Idaho Department of Corrections. Ms. Siegert acted as the Medical Health Service Director and Level 3 Appellate Authority for all the medical grievances at Idaho Department of Corrections (herein after referred to as IDOC). Ms. Siegert is the final authority in all medical grievances. Ms. Siegert became aware of Mr. Wahl's shoulder issue from his medical grievances. Ms. Siegert was informed by Mr. Wahl that he had not received the proper treatment for his right shoulder. After learning Mr. Wahl's delay in treatment had caused a significantly diminished chance of Mr. Wahl ever having a fully functioning right shoulder, Defendant Siegert indicated Corizon was responsible and there had not been any delay in treatment. Defendant Siegert's indifference was displayed by her inactions after learning about the improper treatment that contributed to Mr. Wahl's decrease in shoulder function and decreased opportunity for proper surgical repair. Ms. Siegert is the IDOC Health Service Director and has the responsibility to ensure that any contract medical providers contracted with the IDOC abide by, including but not limited to, the terms of the contract and provide adequate medical care to inmates in the care and custody of IDOC.

10.     **Aaron Hofer** was or still is a Health Services Administrator with Corizon who reviews IDOC inmate grievances. As a Level 2 appellate authority, Mr. Hofer became aware of the ongoing right shoulder issue Mr. Wahl has had and the need for extensive care.

11.     Defendant **Rebekah M. Haggard, M.D.,** is employed by or contracted with Corizon as the regional medical director. Her role was to oversee and provide medical care to the inmates held at Idaho State Correctional Institute (hereinafter ISCI). Dr. Haggard is being sued in

her individual and official capacity. But for the actions, negligence, malpractice, inactions, delays, and deliberate indifference to Mr. Wahl's medical condition by Dr. Haggard and her staff, Mr. Wahl would not have suffered loss of function and the decreased ability to surgically repair his right shoulder.

12.     Upon information and belief, **John Does 1-5** are Corizon employees who are aware of Mr. Wahl's right shoulder surgery and subsequent injury. Mr. Wahl reserves the right to amend his complaint upon learning of the identity of the medical providers with Corizon.

13.     Upon information and belief, Defendant **Stephen Bartlett** is the Ada County Sheriff and has responsibility over the Ada County jail, including providing healthcare to inmates housed in the jail.

14.     Upon information and belief, **John Does 6-10** are Ada County Sheriff employees or contracted healthcare providers that had the responsibility to provide healthcare to Ada County jail inmates.

## III.     JURISDICTION AND VENUE

15.     This action arises under the Constitution of the United States, particularly the Eighth, and Fourteenth Amendments to the Constitution of the United States, and the law of the United States, particularly the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988.  This action is brought for damages and other appropriate relief for violation of Mr. Wahl's civil rights under color of state law.

16.     The court has jurisdiction over Mr. Wahl's federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343(a).  The court has jurisdiction over Mr. Wahl's state claims pursuant to 28 U.S.C. §1367.  Venue is proper in this district pursuant to 28 U.S.C. §1391 (b).

## IV.     PREVIOUS LAW SUITS

17.     Mr. Wahl has filed suit in State and/or Federal court.

## VI. FACTUAL ALLEGATIONS

18.     Mr. Wahl has been incarcerated at IDOC since June 17, 2017 and is currently housed at Idaho State Correctional Institute.

19.     In October 2016, Mr. Wahl's right shoulder was seriously injured while at work when he deflected a falling 74-foot beam so it would not land on a co-worker.

20.     In November 2016, Mr. Wahl underwent a major right shoulder surgical repair which required extensive recovery and rehabilitation afterward.

21.     On February 23, 2017, Mr. Wahl's shoulder was still recovering from the surgery and he continued to use a brace/sling, except when sleeping.

22.     On February 23, 2017, Mr. Wahl was arrested on a parole violation by Kip Laury. Mr. Wahl informed Defendant Laury about his surgery and that he was still in recovery prior to the arrest.

23.     At the time of the arrest, Mr. Wahl's right shoulder had not attained full range of motion. Mr. Wahl informed Defendant Laury that his right shoulder was still recovering from the surgery and he could not get his arm behind his back. Mr. Wahl requested two (2) pairs of handcuffs to accommodate his right shoulder's restricted range of motion.

24.     During the course of handcuffing Mr. Wahl, Defendant Laury had to force Mr. Wahl's wrists together which injured the post-surgical shoulder. Mr. Wahl felt popping in his shoulder and felt a painful a tearing sensation.

25.     Mr. Wahl requested his shoulder brace, but this request was denied by Defendants Laury and Mayer.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

26.     Defendants Laury and Mayer transferred Mr. Wahl to the Garden City Police who repeated the handcuff procedure, causing further pain and injury to Mr. Wahl's right shoulder.

27.     Mr. Wahl was transported to the Ada County Jail in Boise, Idaho where he remained in a single pair of handcuffs for several hours.

28.     On or about February 23rd or 24th, 2017, while in custody at the Ada County Jail, Mr. Wahl requested medical care for his right shoulder.

29.     Ada County Jail staff refused to provide Mr. Wahl with medical care for his right shoulder citing that since Mr. Wahl was a parole violator and he was under the care and custody of IDOC.

30.     Mr. Wahl again requested the foam brace/sling that had been prescribed for his right shoulder, but this request was denied.

31.     Mr. Wahl remained in the Ada County Jail for approximately four (4) months. During that time, he was denied his shoulder brace, treatment, and pain medication.

32.     Mr. Wahl filed a Grievance for the lack of medical attention for his right shoulder but did not receive a response.

33.     On or about June 19, 2017, Mr. Wahl was transported to ISCI. He was taken to the Receiving and Diagnostic Unit (hereinafter RDU) where he immediately informed the medical staff of his right shoulder surgery and recent re-injury. He was informed the right shoulder would not be treated without first filling out and submitting a Health Service Request Form (hereinafter HSR).

34.     On or about June 20, 2017, Mr. Wahl was seen in medical by Defendant Bushnell, P.A. for a boil on his buttocks that was making him ill. Mr. Wahl requested his right shoulder by

evaluated. Mr. Wahl was informed by Defendant Bushell that he could only be seen for one issue and because of the severity of the boil, he would not address the right shoulder issue.

35.     The boil became life threatening and Mr. Wahl was transported to St. Alphonsus Regional Medical Center (hereinafter SARMC) for treatment. He remained at SARMC for approximately five (5) days.

36.     On or about June 25, 2017, Mr. Wahl returned to ISCI and was placed in the medical department and placed in quarantine.

37.     On or about June 25, 2017, Mr. Wahl submitted an HSR for his right shoulder.

38.     The attending nurse returned the unprocessed HSR to Mr. Wahl and informed him that he could not submit an HSR for his right shoulder while he was in quarantine and still under RDU status, as per policy.

39.     Mr. Wahl was not released from quarantine and RDU status until approximately the first part of August 2017.

40.     From approximately June 17, 2017 through early August 2017, Mr. Wahl discussed his shoulder pain and injury to several medical staff. Defendant Bushnell and Defendant Sutherlin both informed Mr. Wahl that he would not receive evaluation or treatment for his right shoulder while he was in quarantine and under RDU status.

41.     Approximately mid-August 2017, Mr. Wahl was released from Quarantine and RDU status. Mr. Wahl gave Defendant Sutherlin a detailed account of his right shoulder history and current issue. Mr. Wahl informed Defendant Sutherlin that the medical records pertaining to his right shoulder surgery were at SARMC. Defendant Sutherlin stated he would put Mr. Wahl on the "call-out" list.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

     42.    In mid-September 2017, Mr. Wahl was scheduled to see Defendant Rogers. Mr. Wahl repeated his right shoulder history and current issue. Defendant Rogers stated Corizon had not received any medical records from SARMC. Mr. Wahl would not receive any treatment until Corizon had received the medical records from SARMC but recommended physical therapy.

     43.    By October 2017, Mr. Wahl had not been scheduled for physical therapy. Mr. Wahl submitted an Offender Concern form to medical regarding the delay in any right shoulder treatment. Mr. Wahl received a response stating he needed to submit an HSR which he then did.

     44.    Approximately two (2) weeks later, Mr. Wahl was seen by Defendant Rogers who stated that "something happened" to the original order for physical therapy and he would submit an order again.

     45.    Approximately two (2) weeks after the appointment with Defendant Rogers, Mr. Wahl attended his first physical therapy session.

     46.    Sometime in November 2017, PT Lindsey (last name unknown) informed Mr. Wahl that physical therapy could not do anything for his right shoulder. Although Mr. Wahl would not benefit from physical therapy, it was policy that Mr. Wahl would have to attend thirty (30) days of physical therapy before he would be referred to a physician. Lindsey expressed concern that physical therapy could potentially do more harm and prescribed daily stretches and exercises.

     47.    Mr. Wahl's physical therapy consisted of one (1) appointment per week for a total of four (4) appointments. Mr. Wahl was only able to attend one of the appointments due to: 1) lockdown, 2) previously scheduled off-site court date, 3) scheduling conflict- previously scheduled for a colonoscopy.

**VERIFIED COMPLAINT-** 10 of 20

48.     Thirty (30) days after the initial physical therapy was prescribed, Mr. Wahl submitted an Offender Concern form regarding further care. Mr. Wahl was again seen by Defendant Rogers.

49.     Defendant Rogers stated he was not sure why no one had followed up with Mr. Wahl after he completed his physical therapy and did not know why Mr. Wahl's shoulder was being ignored.

50.     Defendant Rogers prescribed an arm sling which Mr. Wahl never received. Defendant Rogers stated he would submit a request for a right shoulder MRI.

51.     In mid-January 2018, Mr. Wahl signed a form provided by Corizon medical staff indicating he was claustrophobic and needed to be sedated in order to complete the MRI. Sedation was to be done at ISCI medical prior to leaving for the off-site MRI. The correctional staff told Mr. Wahl that he was expected in Medical for sedation, but he was never cleared to go to Medical. He was then directed to 7 House for transportation. He informed the staff he had not been sedated, but due to scheduling, there was no time. Mr. Wahl was transported to St. Luke's Hospital for the MRI. Mr. Wahl informed the staff that he had not been sedated but would attempt the MRI. Due to his claustrophobia, he could not do the MRI. The MRI was cancelled and Mr. Wahl was transported back to ISCI.

52.     A second MRI was scheduled on or about February 7, 2018, Mr. Wahl was sedated properly, and the MRI was completed.

53.     Approximately two (2) weeks after the MRI, Defendant Rogers informed Mr. Wahl that due to the results, he would refer Mr. Wahl to an orthopedic specialist. Defendant Rogers also re-prescribed the arm sling and stated the original prescription "had been lost".

54.     Mr. Wahl received a Medical Information Update/Response (hereinafter MIU/R) notice to pick up the arm sling. It stated it could be picked at the ISCI Pharmacy building. He showed the MIU/R to the attending medical staff who responded by saying she didn't care what the notice said, the pharmacy did not issue slings and that Mr. Wahl needed to go to Sick Call at Medical for the sling.

55.     Mr. Wahl took the MIU/R to Sick Call, where he was informed arm slings are not at Sick Call but are at the Pharmacy. Mr. Wahl returned to the Pharmacy and again showed the same staff member the MIU/R. She told Mr. Wahl to leave and asked security staff to assist in his removal. Mr. Wahl did not receive a sling.

56.     On or about March 7, 2018, Mr. Wahl had a medical appointment with Defendant Eldridge. Mr. Wahl requested a "No Tuck Memo" because it was very difficult to tuck in his shirt due to the deteriorating shoulder strength and decreased range of motion. A "No Tuck Memo" was issued.

57.     On or about March 27, 2018, Mr. Wahl met with Joni Lemons for a medical record review. In the review, he was able to read the MRI report from February. The damage to Mr. Wahl's right shoulder was more extensive than had been previously shared by Defendant Rogers.

58.     Mr. Wahl asked Ms. Lemons why he had not been referred to an orthopedic specialist. Ms. Lemons left the room and when she returned, informed Mr. Wahl there had been a computer error and the "referral had been lost" and he would be scheduled soon.

59.     In early April 2018, during a chronic care appointment with Defendant Eldridge, Mr. Wahl stated he had not received an arm sling prescribed by Defendant Rogers in December

2017. Defendant Eldridge issued a basic, very thin cloth, sling that provided little to no support to Mr. Wahl's right shoulder.

60.    On or about April 11, 2018, Mr. Wahl submitted an HSR to renew his "No Tuck" memo which had expired on or about April 7, 2018. On or about April 13, 2018, Mr. Wahl received a response from Defendant Rogers that a "No Tuck" memo was not indicated in his file so there was nothing to renew.

61.    On or about April 12, 2018, Mr. Wahl submitted a Concern Form regarding an appointment with an off-site specialist for his shoulder. On or about April 17, 2018, he received a response from Ombudsman Shelly Mallet, LPN that an appointment with the specialist had not been scheduled because the orthopedic specialist had not read Mr. Wahl's paperwork that had been sent.

62.    On or about April 23, 2018, Mr. Wahl had a medical appointment with Defendant Eldridge. During this appointment, Defendant Eldridge stated Defendant Rogers must not have read Mr. Wahl's file regarding the "No Tuck" memo because the file clearly indicated he had been issued one previously. Defendant Eldridge renewed the "No Tuck" memo.

63.    On or about April 23, 2018, Mr. Wahl submitted a Concern form regarding an appointment with an orthopedic specialist. On or about April 23, 2018, Ms. Mallet responded that Mr. Wahl had been scheduled for on off-site consultation with an orthopedic specialist.

64.    On May 8, 2018, Mr. Wahl met with Dr. James Beckmann, an orthopedic specialist at St. Luke's Hospital. After an evaluation, review of the MRI report, a review of the X-rays taken during the appointment, Dr. Beckmann informed Mr. Wahl that his right shoulder could not be repaired in the same manner as his first surgery due to serious atrophy from delay in treatment. Since a repair was not a viable option due to the severe atrophy, a total shoulder

replacement was an alternative, but Mr. Wahl was too young. Dr. Beckmann recommended steroid injections for the shoulder pain.

65.     On or about May 10, 2018, Mr. Wahl submitted a Concern form to Defendant Siegert regarding the delay in treatment to his right shoulder that had caused irreparable damage. Defendant Siegert replied that IDOC does not pay for medical and Corizon is responsible for payment of any medical care. Mr. Wahl filed a Grievance.

66.     On or about May 24, 2018, Mr. Wahl met with Defendant Rogers and Mr. Wahl discussed the appointment with the specialist, Dr. Beckmann, and the recommended steroid injections. Defendant Rogers stated he had not seen any report or recommendation from Dr. Beckmann and did not expect to see one for at least another month. Defendant Rogers refused to give Mr. Wahl a steroid injection and turned the discussion to questioning Mr. Wahl about an upcoming parole date.

67.     On or about June 22, 2018, Mr. Wahl received a response from Defendant Siegert regarding his grievance addressing the delay in treatment to his right shoulder. Defendant Siegert denied the grievance and stated there had been no delay in treatment and that all available administrative remedies regarding delayed medical care had been exhausted.

68.     Upon information and belief, during a chronic care appointment, Defendant Rogers informed Mr. Wahl that Corizon would no longer provide treatment for his right shoulder.

69.     Upon information and belief, by July 2018, Mr. Wahl still had not received the steroid injections recommended by Dr. Beckmann. Mr. Wahl registered a complaint through Balla representatives and submitted another HSR form regarding the absence of steroid injections.

70.     On or about July 28, 2018, Mr. Wahl received a steroid injection. The steroid injections have provided little to no help relieving the pain in Mr. Wahl's right shoulder.

71.     As a result of the actions describe above, Mr. Wahl has had unnecessary pain and suffering, and irreparable damage to his right shoulder.

72.     Mr. Wahl never demanded medical attention above the expected standard of care. Mr. Wahl consistently complained of his need for care of his right shoulder. Mr. Wahl continued to request medical attention to his right shoulder after he was transported to ISCI and under the medical care of Defendant Corizon's medical personnel.

73.     Defendant IDOC has the responsibility to provide reasonable medical care to its inmates. IDOC has elected to contract with Corizon for the provision of its medical care to its inmates. IDOC has not relinquished and/or divested itself of its duty and obligation to provide medical care. IDOC still has the overall duty to provide reasonable medical care to its inmates. IDOC has personnel that supervise the medical care and the medical processes that Corizon provides.

74.     IDOC personnel, such as, Rona Siegert have the duty and obligation to ensure reasonable medical care is provided to the inmates via Corizon or some other source.

## FIRST CLAIM FOR RELIEF

(Deprivation of Civil Rights – 42 U.S.C. § 1983)
All Defendants

75.     Mr. Wahl incorporates the necessary facts, venue and jurisdiction allegations as if fully rewritten herein.

76.     Mr. Wahl was an inmate under the care and control of Defendants during the relevant times of this case.

77.    Mr. Wahl was deprived of his civil rights under the Eighth and Fourteenth Amendments to the United States Constitution for deliberate indifference and cruel and unusual punishment.

78.    Mr. Wahl is entitled to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution. This protection includes a right to timely and adequate medical care. Failure to provide timely and adequate medical care amounts to deliberate indifference to a prisoner's wellbeing and constitutes cruel and unusual punishment in violation of the Eighth Amendment. Recklessness with respect to the required standard of care can constitute "deliberate indifference" to a prisoner's medical needs under the Eighth Amendment. In this case, Defendants acted with deliberate indifference by failing to adequately provide the necessary care for Mr. Wahl's right shoulder.

79.    Mr. Wahl suffered deterioration of his right shoulder which will precludes him from a less invasive surgical repair and decreasing alternative remedies and rehabilitation of his right shoulder.

SECOND CLAIM FOR RELIEF

(Negligence –IDOC Defendants, Defendant Laury, Defendant Mayer, Defendant Barghoorn and Defendant Corizon)<br>(Idaho State Law Claim)

80.    Mr. Wahl incorporates the necessary facts, venue and jurisdiction allegations as if fully rewritten herein.

81.    Defendants and Corizon have a duty to protect inmates from injury.

82.    Defendants IDOC, Defendant Corizon breached their duty to protect Mr. Wahl from injury and treat the right shoulder to prevent further damage and deterioration of his right shoulder.

83.    Mr. Wahl's injury was directly and proximately caused by Defendant Laury,
Defendant Mayer, Defendant Barghoorn, IDOC and Defendant Corizon's breach of their duty.

84.    Mr. Wahl suffered a severe injury and damages as a result of Defendant Laury,
Defendant Mayer and Defendant Corizon's breach.

## THRID CLAIM FOR RELIEF

### (Respondeat Superior – IDOC; Rona Siegert)
### (Idaho State Law Claim)

85.    Mr. Wahl incorporates the necessary facts, venue and jurisdiction allegations as if
fully rewritten herein.

86.    Defendant Siegert as the IDOC Health Services Director has the responsibility to
ensure that any contract medical providers contracted with the IDOC abide by, including but not
limited to, the terms of the contract and provide adequate medical care to inmates in the care and
custody of IDOC.

87.    Defendant Siegert was derelict in her duty to properly oversee the contract to
ensure that the terms of the contract were being fulfilled and that IDOC inmates were receiving
adequate medical care.

## FOURTH CLAIM FOR RELIEF

### (Negligence –Ada County Probation and Parole)
### (Idaho State Law Claim)

88.    Mr. Wahl incorporates the necessary facts, venue and jurisdiction allegations as if
fully rewritten herein.

89.    Kip Laury and TJ Mayer were put on notice by Mr. Wahl that he had had a recent
major surgical repair of his right shoulder at the time of his arrest.

90.     Defendants Laury and Mayer had a duty to not injure Mr. Wahl and breached their duty when they ignored Mr. Wahl's pleas to not place his hands in cuffs behind his back due to the surgery on his shoulder. Mr. Wahl was not resisting and was being cooperative.

91.     Defendants Laury and Mayer were the actual and proximate cause of the damage to and subsequent deterioration of Mr. Wahl's right shoulder repair.

92.     Mr. Wahl has suffered a serious deterioration of his right shoulder with a significant decrease in the opportunity for any future, successful repairs.

FIFTH CLAIM FOR RELIEF<br>(Excessive Force- Defendants Laury, Mayer, and Barghoorn)<br>(Fourth Amendment Violation under 42 U.S.C. § 1983 and 1988)

93.     Mr. Wahl incorporates the necessary facts, venue and jurisdiction allegations as if fully rewritten herein.

94.     Defendants Laury, Mayer, and Barghoorn were put on notice by Mr. Wahl that he had had a recent major surgical repair of his right shoulder at the time of his arrest and that by placing Mr. Wahl's hands in handcuffs behind his back would injure his shoulder.

95.     Defendants Laury, Mayer, and Barghoorn ignored Mr. Wahl's pleas and placed his hands in single handcuffs behind his back, tearing apart the very repair that had been surgically completed a few short months prior.

96.     Mr. Wahl was being cooperative and was not resisting arrest in any way.

97.     Laury, Mayer, and Barghoorn had no reason to place Mr. Wahl's hands behind his back.

98.     Due to the excessive force applied by Laury, Mayer, and Barghoorn, Mr. Wahl suffered excruciating pain and permanent injury to his shoulder, in violation of the Fourth Amendment.

Mr. Wahl demands a trial by jury for all issues.

RIGHT TO AMEND

Mr. Wahl reserves his right to amend this Complaint to include additional causes of action and parties as they arise and are discovered through discovery.

PRAYER FOR RELIEF

WHEREFORE, Mr. Wahl prays for the following relief:

1. Awarding Mr. Wahl compensatory damages for past and future pain, suffering, embarrassment, humiliation, mental anguish and past and permanent impairment, including loss of earning capacity and reasonable value of all medical care; and a reasonable value of legal services that he needed and obtained by his attorneys.

2. Awarding Mr. Wahl of punitive damages against non-governmental persons for these Defendants' conduct that was intentional, reckless, malicious, or callously indifferent to Mr. Wahl's protected rights and needs. That the sum of which is not controlled by notice or administrative law either State or Federal but in the manifest discretion of this court and a jury.

3. Awarding Mr. Wahl prejudgment and post-judgment interest plus any reasonable costs of collection of the judgment.

4. Awarding attorney's fees, costs and other relief to which he is entitled.

PLAINTIFF WAHL DEMANDS A JURY TRIAL FOR ALL CLAIMS AND CAUSES OF ACTION TRIABLE BY JURY IN ACCORDANCE WITH THE LAW OF THE UNITED STATES OF AMERICA.

Dated this 22nd day of February 2018.

/s/*Ryan T. Earl*
Ryan T. Earl
Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## VERIFICATION

**STATE OF IDAHO** )
                   )ss
**COUNTY OF ADA** )

CHAD L. WAHL, being first duly sworn upon oath, says:

That he has read the above foregoing Verified Complaint; that he knows the contents thereof and believes that the facts stated herein are true.

Chad L. Wahl

SUBSCRIBED AND SWORN to before me this _19_ day of February, 2019.

NOTARY PUBLIC FOR IDAHO

Residing at: Star, ID

**VERIFIED COMPLAINT-** 20 of 20